IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JULIUS OLOLA,<br><br>             Plaintiff,<br><br>v.<br><br>OFFICER TRACE COX et al.,<br><br>             Defendants. | REPORT AND RECOMMENDATION AND ORDER<br><br><br>Case No. 2:17-CV-151-DB-DBP<br><br><br>District Judge Dee Benson<br><br>Magistrate Judge Dustin B. Pead |

District Judge Dee Benson referred this case to Magistrate Judge Dustin B. Pead pursuant to 28 U.S.C. § 636(b)(1)(B).  (ECF No. 26.)  On April 5, 2017, the court granted Plaintiff Julius Olola's ("Plaintiff") application for leave to proceed *in forma pauperis* and waived the prepayment of filing fees pursuant to 28 U.S.C. § 1915 ("IFP Statute").  (ECF No. 3.) Accordingly, the court will screen Plaintiff's action as required under the IFP Statute.  *See, e.g.*, *Lister v. Dep't of the Treasury*, 408 F.3d 1309, 1312, (10th Cir. 2005).  Because Plaintiff is proceeding pro se in this case, the court will construe his pleadings liberally.  *See, e.g.*, *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

## PROCEDURAL BACKGROUND

On March 2, 2017, the court received Plaintiff's complaint against the judge, prosecutor, and his counsel (collectively, "State Court Defendants") in two criminal cases against him in

Utah's Third District Court.[1]  That complaint ("Original Complaint") was docketed on April 5,

2017 (ECF No. 4), after Plaintiff's application to proceed under the IFP Statute was granted.

(ECF No. 3.)  The same day his Original Complaint was docketed, the court received another

complaint ("Second Complaint") from Plaintiff against the West Valley Police Department and

Officer Trace Cox[2] (collectively, "WVPD Defendants").  (ECF No. 5.)  In his Second Complaint,

Plaintiff wrote "State of Utah" in the caption next to the WVPD Defendants.  (*Id.*)  Because of

this reference to the State of Utah, the Clerk's Office staff likely docketed the Second Complaint

as an Amended Complaint.  However, upon careful review of the docket and Plaintiff's case file,

it appears that Plaintiff actually intended to file two separate lawsuits.  Whether Plaintiff

intended to file one case or two has no bearing on this court's analysis, and it will address each

case separately in this Report and Recommendation.

## STANDARDS OF REVIEW

As noted above, Plaintiff is proceeding pursuant to the IFP Statute, which requires courts

to "dismiss the case at any time if the court determines [the action] fails to state a claim on which

relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).  Moreover, it is well settled that the lack

of subject matter jurisdiction may be raised *sua sponte* by the court at any point in the

---

[1] *See State v. Olola*, Case Nos. 151909925 (filed Sept. 10, 2015) (Felony DUI and related charges), 141904669 (filed Apr. 25, 2014) (Protective Order violation).

[2] While Plaintiff identified Officer Trace Cox simply as "Officer Cox" in his Second Complaint, the court takes judicial notice that the docket in this state action, *West Valley City v. Olala*, No. 161701874 (filed Aug. 16, 2016), lists Officer Cox's first name as Trace. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

proceedings. *McAlester v. United Air Lines*, 851 F.2d 1249, 1252 (l0th Cir. 1988). "A court

lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the

proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power &*

*Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

In determining whether a complaint fails to state a claim for relief under the IFP Statute,

courts employ the same standard used for analyzing motions to dismiss under rule 12(b)(6) of the

Federal Rules of Civil Procedure. *Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007).

Under that standard, courts "look for plausibility in th[e] complaint." *Id*. at 1218 (quotations and

citations omitted) (alteration in original). In particular, courts "look to the specific allegations in

the complaint to determine whether they plausibly support a legal claim for relief. Rather than

adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough

to raise a right to relief above the speculative level.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555-56 (2007)) (other quotations and citation omitted) (alterations in original).

In undertaking that analysis, the court is mindful that Plaintiff is proceeding pro se and

that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent

standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th

Cir. 1991); *see also, e.g.*, *Ledbetter*, 318 F.3d at 1187. At the same time, however, it is not "the

proper function of the district court to assume the role of advocate for the pro se litigant,"

*Bellmon*, 935 F.2d at 1110, and the court "will not supply additional facts, nor will [it] construct a

legal theory for [a pro se] plaintiff that assumes facts that have not been pleaded." *Dunn v.*

*White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam). Further,

> [t]he broad reading of [a pro se] plaintiff's complaint does not
> relieve the plaintiff of the burden of alleging sufficient facts on

> which a recognized legal claim could be based. . . . [C]onclusory
> allegations without supporting factual averments are insufficient to
> state a claim on which relief can be based.  This is so because a pro
> se plaintiff requires no special legal training to recount the facts
> surrounding his alleged injury, and he must provide such facts if
> the court is to determine whether he makes out a claim on which
> relief can be granted.  Moreover, in analyzing the sufficiency of the
> plaintiff's complaint, the court need accept as true only the
> plaintiff's well-pleaded factual contentions, not his conclusory
> allegations.

*Bellmon*, 935 F.2d at 1110 (citations omitted).

With the foregoing standards in mind, the court will now address the sufficiency of

Plaintiff's two complaints.

## DISCUSSION

### I.  Original Complaint

In his Original Complaint, Plaintiff alleges violations of his constitutional rights under 42

U.S.C. §§ 1983 and 1985.  Specifically, Plaintiff contends that the State Court Defendants,

individually or collectively, conspired to convict him of Driving Under the Influence of

Alcohol/Drugs ("DUI"), deprived him of his right to a jury trial, falsified court records to make it

appear as though he was found guilty by a jury even though no jury trial was held, sentenced him

to serve 365 days in prison rather than jail, ordered that his sentence for Violation of a Protective

Order was to run concurrently with his DUI sentence absent a finding of guilt on the DUI, failed

to notify him of his next court date resulting in the issuance of a bench warrant, and ignored his

requests for post-conviction relief.

The court has reviewed the docket in the state cases and takes judicial notice that Plaintiff

was charged with the following counts:  (1) Felony DUI, Utah Code Ann. § 41-6a-502;

(2) Driving on Suspended or Revoked License (Alcohol Related), Utah Code Ann. § 53-3-

227(3)(a); (3) Alcohol Restricted Driver, Utah Code Ann § 41-6a-530; and (4) Interlock

Restricted Driver, Utah Code Ann. § 41-6a-518.2(3).  In the other state case, Plaintiff was

charged with (1) Violation of Protective Order, Utah Code Ann. § 76-5-108, and (2) Criminal

Trespass Knowing Entry Unlawful, Utah Code Ann. § 76-6-206(2)(b) (superseded by statute on

July 1, 2014).  With regard to the DUI case, Plaintiff's counsel moved to bifurcate the charges so

that the jury would render a verdict only on the first count of Felony DUI and the judge would

consider the evidence related to the other three counts.  The jury trial was held on May 4, 2016,

and Plaintiff was present.  Plaintiff waived his right to testify before the jury.  After presentation

of the evidence, the jury was excused for deliberations and in less than an hour, returned a

verdict of guilty on the charge of Felony DUI.  The jury was then excused, and the judge heard

evidence on the other three counts.  Plaintiff again waived his right to testify, and the court found

him guilty on the remaining counts.

Although Plaintiff contends that the State Court Defendants conspired to falsify the

docket and other records evidencing the occurrence of the jury trial, this court concludes that

these allegations are frivolous under the IFP Statute.  *See* 28 U.S.C. § 1915(e)(2)(B)(i)

(providing that whenever the court authorizes a party to proceed without the prepayment of fees

under the IFP Statute, the court is required to "dismiss the case at any time if the court

determines that . . . the action or appeal . . . is frivolous or malicious").  Plaintiff's assertions

"rise to the level of the irrational or the wholly incredible" and are contradicted by judicially

noticeable facts.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Plaintiff's Original Complaint is

patently frivolous as it "lacks an arguable basis either in law or in fact" and describes "fantastic

or delusional scenarios."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  This court finds it to be

"wholly incredible" that the State Court Defendants would, or even could, conspire to falsify

court records in order to deprive Plaintiff of his constitutional rights. *See Denton*, 504 U.S. at 33.

More importantly, because Plaintiff's state court matter remains pending, this court lacks

subject matter jurisdiction under the *Younger* abstention doctrine, which requires a federal court

to abstain from considering a case in certain circumstances. *See Younger v. Harris*, 401 U.S. 37

(1971) (holding that federal courts are to avoid interfering with ongoing state court proceedings

if the state court provides an adequate forum to present federal constitutional challenges). In

determining whether *Younger* abstention is appropriate, courts examine whether

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2)
> the state court provides an adequate forum to hear the claims raised in the
> federal complaint, and (3) the state proceedings involve important state
> interests, matters which traditionally look to state law for their resolution or
> implicate separately articulated state policies.

*Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (quotations and

citation omitted). That said, "[a] court will not abstain under *Younger* 'in cases of proven

harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a

valid conviction and perhaps in other extraordinary circumstances where irreparable injury can

be shown.'" *Wilson v. Morrissey*, 527 Fed. App'x 742, 743-44 (10th Cir. 2013) (quoting *Perez v.

Ledesma*, 401 U.S. 82, 91 (1971)).

All three requirements for abstention under *Younger* are met in the instant case, and there

exist no extraordinary circumstances warranting an exception from its application. First, the

court takes judicial notice that Plaintiff's criminal case is currently on appeal before the Utah

Court of Appeals.[3] Second, the state appeals process provides Plaintiff an adequate forum to

---

[3] *Olola v. State*, No. 20180044 (Utah Ct. App. filed Sept. 6, 2017).

6

assert his constitutional claims.  Third, the state's prosecution of Plaintiff for Felony DUI and

related offenses is certainly an important state interest.  *See, e.g.*, *Aid for Women v. Foulston*, 441

F.3d 1101, 1119 (10th Cir. 2006) (noting that states have a "strong interest" in enforcing their

criminal laws).  Moreover, Plaintiff must satisfy a "heavy burden to overcome the bar of *Younger*

abstention by setting forth more than mere allegations of bad faith or harassment."  *Wilson*, 527

Fed. App'x at 744 (quotations and citation omitted).  Plaintiff has failed to meet this heavy

burden.

This court's "conclusion that *Younger* abstention applies ends the matter."  *Taylor v.*

*Jaquez*, 126 F.3d 1294, 1298 (10th Cir. 1997).  However, even assuming this court has

jurisdiction, the State Court Defendants are immune from suit.  It is well settled that judges are

granted absolute immunity from liability when acting in their judicial capacity.  *See Mireles v.*

*Waco*, 502 U.S. 9, 11-12 (1991) (per curiam).  "Under the common law, judges are absolutely

immune from suit on any claim based on the conduct of their office, including allegations that a

decision is erroneous, malicious, or in excess of their judicial authority."  *Christensen v. Ward*,

916 F.2d 1462, 1473 (10th Cir. 1990).  Judicial immunity may be circumvented only for (1)

nonjudicial actions performed outside of the judge's judicial capacity and (2) judicial actions

"taken in the complete absence of all jurisdiction."  *Mireles*, 502 U.S. at 11-12.

A determination as to whether an action is judicial "relate[s] to the nature of the act itself,

i.e., whether it is a function normally performed by a judge, and to the expectations of the

parties, i.e., whether they dealt with the judge in his judicial capacity."  *Stump v. Sparkman*, 435

U.S. 349, 362 (1978).  In this case, Plaintiff's allegations against the judge who presided over his

case demonstrate that the judge's actions are the essence of judicial actions performed in her

7

judicial capacity. The judge's actions were completely within her authority as a judicial officer.

"[J]udicial immunity is not overcome by allegations of bad faith or malice." *Mireles*, 502 U.S. at

12. While Plaintiff arguably asserts that the judge's actions in falsifying court records is an

action taken in the absence of jurisdiction, as noted above, this court has determined that

Plaintiff's allegation is frivolous.

Absolute judicial immunity may also be extended to non-judicial figures, including court

clerks, where their actions are "judicial acts . . . having an integral relationship with the judicial

process." *Wymore v. Green*, 245 Fed. Appx. 780, 783 (10th Cir. 2007) (quotations and citation

omitted); *see Coleman v. Farnsworth*, 90 Fed. Appx. 313, 317 (10th Cir. 2004) (noting that

judicial immunity applies to court employees because "[t]o hold otherwise would have a chilling

effect on the judicial duties and actions of the clerk, who would be readily subject to suit in the

course of performing his or her duties"). And, "a prosecutor enjoys absolute immunity from

§ 1983 suits for damages when he acts within the scope of his prosecutorial duties." *Imbler v.

Pachtman*, 424 U.S. 409, 420 (1976). For instance, "[p]rosecutors are entitled to absolute

immunity for their decisions to prosecute, their investigatory or evidence-gathering actions, their

evaluation of evidence, their determination of whether probable cause exists, and their

determination of what information to show the court." *Nielander v. Bd. of Cty. Com'rs.*, 582

F.3d 1155, 1164 (10th Cir. 2009). "To determine whether a state prosecutor's actions are

shielded from liability under § 1983 by absolute immunity, courts apply 'a functional approach,

which looks to the nature of the function performed, not the identity of the actor who performed

it.'" *Glaser v. City and Cty. of Denver, Colo.*, 557 F. App'x 689, 704 (10th Cir. 2014) (quoting

*Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)).  Here, the prosecutor was acting within the

scope of her prosecutorial duties and she is entitled to absolute immunity.

"Further, it is well established that neither private attorneys nor public defenders act

under color of state law for purposes of § 1983 when performing their traditional functions as

counsel to a criminal defendant." *Dunn v. Harper Co.*, 520 Fed. App'x 723, 725-26 (10th Cir.

2013) (citing *Polk Co. v. Dodson*, 454 U.S. 312, 325 (1981)).  A plaintiff who alleges that a

private actor is acting under color of state law by conspiring with a judge to deprive an

individual of a constitutional right must rely on something more than conclusory allegations to

state such a cause of action. *See Dennis v. Sparks*, 449 U.S. 24, 28–29 (1980), *see also Ashcroft

v. Iqbal*, 556 U.S. 662 (2009).

Therefore, even assuming that this court possessed subject matter jurisdiction, the State

Court Defendants are immune from suit and Plaintiff's allegations are frivolous under the IFP

Statute.  Moreover, this court concludes that it would be futile to permit Plaintiff to amend his

complaint because he cannot allege any facts that would give this court subject matter

jurisdiction. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288

(10th Cir. 2008) ("A proposed amendment is futile if the complaint, as amended, would be

subject to dismissal."). Based on the foregoing, this court recommends that Plaintiff's Original

Complaint be dismissed.

## II.  Second Complaint

In his Second Complaint, Plaintiff asserts that the WVPD Defendants conducted an

unreasonable search of Plaintiff's backpack and failed to provide him with *Miranda*[4] warnings

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

when they arrested him on a bench warrant.  Specifically, Plaintiff alleges that on August 13,

2016, Officer Cox and another officer conducted a "welfare check" on him as he was waiting on

the side of the road to be picked up by a taxi.  Plaintiff alleges that the officers questioned him

and asked for his identification card.  Plaintiff voluntarily complied with that request.  Shortly

thereafter, the officers informed Plaintiff that he had an active bench warrant, handcuffed and

arrested him, and placed him in the back of the patrol car.  Plaintiff contends that the officers

then searched his backpack without probable cause, a warrant, or consent.  Plaintiff alleges that

only after Officer Cox handcuffed him, placed him in the back of the patrol car, and searched his

backpack, did Officer Cox attempt to read Plaintiff his *Miranda* rights and obtain consent for the

search of his backpack, which Plaintiff refused.

  The court has reviewed the docket in the state court case and takes judicial notice that on

August 16, 2016, Plaintiff was charged with Possession or Use of a Controlled Substance under

Utah Code Ann. § 58-37-8(2)(a)(i) and Use or Possession of Drug Paraphernalia under Utah

Code Ann. § 58-37a-5(1).[5]  The notice of Plaintiff's arraignment that was mailed to him was

returned to the state court and, as a result, he failed to appear.  The court issued a bench warrant.

Then on February 27, 2017, Plaintiff sent a letter to the state court indicating that he was not

aware of this case and was currently serving time in the Gunnison Prison.  On May 4, 2017,

Plaintiff was arraigned on these charges.  On the same date, his counsel filed a motion to

suppress, which was scheduled for June 7, 2017.  However, on May 15, 2017, the charges against

Plaintiff were dismissed without prejudice, and the motion to suppress hearing was cancelled.

---

[5] *See West Valley City v. Olala*, No. 161701874 (*filed* Aug. 16, 2016).

Plaintiff argues that the court erred by failing to obtain his formal consent to cancel the motion to suppress hearing and dismiss the case.

First, Plaintiff's argument regarding Officer Cox's failure to read Plaintiff his rights under *Miranda* does not, by itself, state a claim upon which relief may be granted.  *See Chavez v. Martinez*, 538 U.S. 760, 772–73, 777–79 (2003) (holding that an officer's alleged failure to read *Miranda* warnings would not in itself violate his constitutional rights).  Plaintiff does not allege that he made a statement that was used against him at trial, and, in fact, his case was dismissed.  Therefore, this claim fails.

Second, Plaintiff argues that the WVPD Defendants violated his Fourth Amendment rights when they searched his backpack without probable cause or consent after he was already handcuffed and in custody.  A search conducted without a warrant per se violates the Fourth Amendment unless it falls under one of the enumerated exceptions to the warrant requirement.  *See Arizona v. Gant*, 556 U.S. 332, 338 (2009).  It is unclear at this stage of the case whether the search would fall within one of those exceptions.  As such, the court finds that Plaintiff's allegations regarding the search of his backpack, construed liberally, are sufficient to warrant service of process on the WVPD Defendants.  However, Plaintiff failed to provide an address for service for the WVPD Defendants.  Therefore, the court orders Plaintiff to file a Notice by March 23, 2018, that contains WVPD Defendants' addresses and/or the addresses of their registered agent(s) or other person(s) authorized to accept service of process on their behalf.

Upon receipt of Plaintiff's Notice, this court will then direct the United States Marshals Service to effect service of Plaintiff's Second Complaint at government expense pursuant to 28 U.S.C. § 1915.  *See* Fed. R. Civ. P. 4(c)(3) ("At the plaintiff's request, the court may order that

11

service be made by a United States marshal or deputy marshal or by a person specially appointed by the court.  The court must so order if the plaintiff is authorized to proceed *in forma pauperis* under 28 U.S.C. § 1915 . . . .") (emphasis added); *see Olsen v. Mapes*, 333 F.3d 1199, 1204 (10th Cir. 2003) ("When a plaintiff is granted *in forma pauperis* status, the district court is required to serve process for the plaintiff.") (emphasis added).

## RECOMMENDATION AND ORDER

Based on the foregoing, this court **RECOMMENDS** dismissal of Plaintiff's Original Complaint for lack of subject matter jurisdiction.  With respect to Plaintiff's Second Complaint, this court **RECOMMENDS** dismissal for failure to state a claim upon which relief may be granted regarding the WVPD Defendants' failure to administer *Miranda* warnings to Plaintiff. The court also **ORDERS** Plaintiff to file a Notice by March 23, 2018, that contains the WVPD Defendants' addresses and/or the addresses of their registered agent(s) or other person(s) authorized to accept service of process on their behalf.  Failure to do so may result in a recommendation to Judge Benson that Plaintiff's Second Complaint be dismissed in its entirety.

Copies of the foregoing Report and Recommendation are being sent to Plaintiff who is hereby notified of his right to object. Within fourteen (14) days of being served with a copy, Plaintiff may file written objections. Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 22nd day of February, 2018.

BY THE COURT:

_____
DUSTIN B. PEAD
United States Magistrate Judge

12